ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Gabriel.Martinez2@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HENRI PESSAH,<br><br>Defendant. | CASE NO. CR 11-00802 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

The United States respectfully requests that this Court sentence defendant HENRI PESSAH to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $2,500 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

//

U.S.' SENT'G MEMO                              1
*United States v. Pessah*, CR 11-00802 CRB

**BACKGROUND**

Defendant Henri Pessah is charged with participating in the bid-rigging conspiracy in San Mateo County from April 2010 to October 2010.  Dkt. 1.  From about 2007 through 2010, Pessah worked as a real-estate agent listing distressed properties owned by financial institutions.  Presentence Report ("PSR") ¶ 15.  A mutual friend introduced co-conspirator Gary Anderson to Pessah, and they began working together in January 2010 to purchase properties at foreclosure auctions.  *Id.*  Anderson paid Pessah a fee for each property Pessah researched and Pessah was paid a real-estate commission for listing the properties Anderson purchased.  *Id.*  Pessah did not invest any of his own funds into the purchase of any properties sold at auction, and instead bid on behalf of Anderson with Anderson's funds.  *Id.*

Pessah entered into payoff agreements on seven properties.  PSR ¶ 16.  For example, on October 13, 2010, Pessah attended an auction for 14016 Melbourne St., in Foster City.  *Id.*  At the auction, either co-conspirator Mohammed Rezaian or co-conspirator Daniel Rosenbledt approached Pessah and offered to have their group (the "Big 5") refrain from bidding in exchange for $12,000.  *Id.*  Pessah agreed and purchased the property without competition.  *Id.*

Pessah also received payoff money for agreeing not to bid on properties.  PSR ¶ 17.  For example, Pessah accepted a $1,500 payoff for the auction for 81 Highland Ave., in San Carlos, auctioned on September 15, 2010.  *Id.*  During his FBI interview, Pessah claimed that he did not remember the property, and attributed the $1,500 payoff money to an unrelated bet he made on another property.  *Id.*  However, multiple co-conspirators and their records show that Pessah received a payoff of $1,500 for this property.  *Id.*  Rezaian and CHS-RG both stated that Pessah received a payoff for the property, which is confirmed in Rezaian's BlackBerry notes.  *Id.*  Furthermore, the payoff was captured on video by the undercover FBI agent.  *Id.*  During the video, while receiving the money from the FBI agent, Pessah complains to the FBI agent that he thought his share should be $2,000, not the $1,500 he received.  *Id.*

On October 27, 2011, Pessah was charged by information with bid rigging and mail fraud in San Mateo County.  Dkt. 1.  On January 18, 2012, Pessah pleaded guilty and began cooperating with the government's investigation.  Dkt. 9.  On September 19, 2017, Pessah

withdrew from his original plea agreement by and entered a new plea agreement to bid-rigging charges only.  Dkt. 59.

Pessah's plea agreement reflects his participation in rigging seven properties in San Mateo County, and a volume of commerce of $1,387,463.  PSR ¶ 17.  The volume of commerce does not reflect the bid-rigging agreements that Pessah participated in for which he received payoff money.  Pessah received $2,500 in payoff money for agreeing not to bid on two properties.  *Id.*

## ARGUMENT

### A.   Sentencing Guidelines Calculations

#### 1.   Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Pessah's Criminal History Category is determined by the Court.  Dkt. 1.  The Presentence Report ("PSR") calculates Pessah's Criminal History Category as I, based on minimal prior criminal history.  PSR ¶¶ 33-37.

#### 2.   Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement.  PSR ¶ 32.  This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility.  PSR ¶¶ 23-32; U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

#### 3.   Fine and Restitution

The PSR calculates a fine range of $20,000 to $69,373, consistent with the plea agreement.  PSR ¶ 70; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In the plea agreement, the government agreed to recommend a fine between $3,000 and $30,000.  Dkt. 59.  In conjunction with its custodial

recommendation, the government recommends a $3,000 fine.  This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.

The government recommends restitution in the amount of $2,500, consistent with the plea agreement.  Dkt. 59.

**B.     Basis for Downward Departure for Substantial Assistance**

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation.  The government recommends a 30 percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of 8 months.

The timing, significance, nature and extent of Pessah's cooperation warrant a 30 percent reduction.  Pessah entered his plea agreement pre-indictment on January 18, 2012, and immediately began cooperating in the investigation.  His early plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.  In particular, the government believes that Pessah's plea was a significant contributing factor in co-conspirator Gary Anderson's subsequent decision to plead guilty.

Additionally, Pessah provided a candid interview with the FBI.  During his interview, Pessah provided corroborating information regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements.  Pessah also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.

For these reasons, a 30 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.     Sentencing Recommendation**

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  The Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Pessah's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines.  The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders."  U.S.S.G. §2R1.1, cmt. n. 5 & Background.  The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities.  A fine alone would not serve as an adequate deterrent in the absence of a custodial term.  Pessah did not originate the conspiracy and only received payoffs on two properties.  PSR ¶ 17.  However, Pessah willingly engaged in the bid rigging.

The government's recommended sentence also adequately considers the history and characteristics of defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his minimal prior criminal history.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Henri Pessah to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $2,500 in restitution.

Dated:  April 19, 2018                                          Respectfully submitted,


                                                                        /s/
                                                                GABRIEL MARTINEZ
                                                                Trial Attorney
                                                                United States Department of Justice
                                                                Antitrust Division